CINTRÓN, PLAINTIFF AND RESPONDENT, *v.* FERNÁNDEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in an Action of Debt.

No. 1255.—Decided May 19, 1915.

LOAN—EVIDENCE OF CONTRACT—CONSTRUCTION OF LAW.—In accordance with sections 1245 and 1247 of the Civil Code, construed in harmony with sections 1221 and 1225, even when the amount of the loan exceeds $300 evidence in writing is not necessary to prove the validity of the contract.

ID.—CONTRACT—EFFECTIVENESS OF CONTRACT—CONSTRUCTION OF LAW.—The effectiveness of contracts between the contracting parties depends exclusively upon their validity by virtue of the existence of the essential conditions and not upon the extrinsic formalities required by law for other different purposes, therefore the parties may compel each other reciprocally to comply with the obligations contracted. Section 1246 of the Revised Civil Code sustains that rule of law.

ID.—EFFECTIVENESS OF CONTRACT.—A contract of loan exists and is perfected from the moment when both parties agree thereto, therefore the debtor assumes at the time he receives the money the obligation to return it within the time agreed upon.

CONTRACT—PUBLIC INSTRUMENT—PRIVATE CONTRACT—VERBAL CONTRACT.—There is a manifest distinction between the necessity for a public instrument and for a private document, and it is that while the former may be necessary even after the verbal contract has been established by a judgment, the latter has hardly any object after such judgment, which presupposes greater authenticity and legal effect.

MERCHANT—COMMERCIAL EMPLOYEE.—When the plaintiff does not allege in his complaint that the defendant is a merchant and the latter does not allege it in his answer, the fact that the evidence may be sufficient to prove that the defendant was a commercial employee is not proof that he is one who regularly devotes himself to trade as defined by article 1 of the Code of Commerce.

ID.—COMMERCIAL LOAN.—When it is not shown that the money lent was used in commercial transactions, although borrowed for the establishment of a

mercantile business, and there is no evidence to show that it was so used, the loan cannot be considered as a commercial loan under the provisions of article 311 of the Code of Commerce.

EVIDENCE—DISCRETION OF COURT.—A court does not abuse its discretion in refusing to allow the plaintiff to be asked while testifying whether it was true that he had transacted the business which is the subject-matter of the action with another person who was a partner of the defendant, when the plaintiff had already testified categorically on direct examination that he had transacted the business with the defendant. Besides, in this case if it had been desired to prove that the plaintiff had made the transaction with another person who was a partner of the defendant, that person could have been called as a witness for the purpose of contradicting the testimony of the plaintiff and of freeing the defendant of liability to the latter.

ID.—TESTIMONY NOT INFLUENCING RESULT.—In this case a witness was asked the following question: "Do you know where the $162 came from?" *Held:* That the court committed no error in ordering the question to be stricken out, because the plaintiff himself, and not the witness, was the proper person to testify as to where the money came from, and he had already done so; and because the answer which the witness might have given to the said question would have had no influence on the result of the case.

The facts are stated in the opinion.

*Mr. Francisco González* for the appellant.

*Mr. Carlos Travecier* for the respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

This is an appeal by defendant José Fernández, known as Fernández Martínez, from a judgment rendered on appeal and after a trial *de novo* by the District Court of Humacao on May 29, 1914, in favor of plaintiff Emiliano Cintrón for $366 and the costs.

It is alleged in the complaint, which is dated November 1, 1913, that on August 2 of the same year the plaintiff lent to the defendant the sum of $362, which was to be returned on October 30, 1913, and that the debt having matured the plaintiff demanded payment from the defendant, who refused payment, the debt therefore being still unpaid.

The defendant denied each and all of the allegations of the complaint and the case went to trial. After the plaintiff had introduced his evidence and rested, the defendant made a motion for nonsuit which was overruled, whereupon the defendant, stating that he desired to stand on the insuf-

ficiency of the evidence before the Supreme Court on appeal, abstained from offering any evidence and allowed the court to render judgment. It did so in the terms stated and the defendant appealed.

The attorney for the appellant alleges the following grounds of appeal:

1. That the court erred in overruling the motion for nonsuit based on the insufficiency of the evidence which the defendant made after the plaintiff had rested and that section 1247 of the Civil Code, as amended by the Act of March 7, 1912, in relation to section 162 of the Law of Evidence, had been violated.

2. That the court violated article 51 of the Code of Commerce in finding the existence of the said contract proven by the testimony of witnesses.

3. That the court erred in not allowing the following question to be put to witness Emiliano Cintrón: "Is it not true that you transacted that business with another man who was a partner of Benítez?"

4. That the court erred in not allowing the following question to be put to witness Luis Toro Pérez: "Do you know where the $162 came from?"

Let us examine the errors in the same order in which they have been assigned.

FIRST ERROR.

After providing that certain enumerated acts and contracts must appear in public instruments section 1247 of the Civil Code adds that all other contracts, in which the amount of the consideration of one (*or*) of the two contracting parties exceeds $300, must be reduced to writing even though it be a private contract.

The amendment to the said section by Act No. 65 of March 7, 1912, does not change the provision transcribed, for the amendment refers only to contracts made through agents. Section 1247 cannot be construed to mean that as the said

loan contract was not reduced to writing, notwithstanding its amount, it cannot be proved by oral testimony. It is true that in the case at bar the loan contract was not reduced to writing, but this does not force us to the conclusion reached by the appellant, for the oral testimony was admitted without objection and neither in the Civil Code nor in the Law of Evidence do we find any provision that evidence in writing is necessary to prove the validity of a loan contract.

Sections 103 and 104 of the Law of Evidence are not applicable to the present case inasmuch as section 1247 should be construed in harmony with the provisions of sections 1221 and 1225. According to section 1221, a contract exists from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service; and section 1225 provides that contracts are perfected by mere consent and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law.

The loan contract between the plaintiff and the defendant existed and was perfected from the time when both parties consented thereto, consequently the obligation on the part of the defendant to return the money lent him within the time stipulated attached from the time when he received it from the plaintiff.

Nor is evidence in writing indispensable to recovery on such an obligation; for, according to section 1245, "Contracts shall be binding, whatever may be the form in which they have been executed, provided the essential conditions required for their validity exist"; and the following section, or 1246, provides that, should the law require the execution of an instrument or other special formality in order to make the obligations of a contract binding, the contracting parties may compel each other to comply with said formalities from the moment in which consent and the other

requirements necessary for their validity have taken place.

It is worthy of note that said sections 1245, 1246 and 1247 comprise the whole of Chapter III of Title II of Book Fourth of the Civil Code under the title, "Effectiveness of Contracts."

In a judgment of July 4, 1899, the Supreme Court of Spain said:

"The effectiveness of contracts between contracting parties depends exclusively upon their validity by virtue of the existence of the essential conditions and not upon the extrinsic formalities required by law for other different purposes, therefore the parties may compel each other reciprocally to comply with the contracted obligations. Article 1279 of the said Code (section 1246 of the Revised Civil Code) ratifies that rule of law, because, foreseeing the probability that the law would require the execution of an instrument or other special formality in order that the obligations of a contract may be made effective, at all events by the party in whose favor they may have been undertaken, it does not subordinate the effectiveness of the contract to the existence of that extrinsic formality, but, on the contrary, considers principally its validity in prescribing that in such a case the contracting parties, apart from the obligations contracted, are obliged to comply with that external formality or solemnity. This does not permit of the contention that it would be lawful for the obligor to contravene the contracted obligations by his acts or even that an action to enforce compliance with the formalities must precede an action arising from the contract."

In a judgment of October 19, 1901, the said court sustains the doctrine laid down in that of July 4, 1899, and expresses itself in the following language:

"Article 1280 (section 1247 of the Revised Civil Code) only enumerates the acts and contracts which must appear in public or private instruments, and article 1279 (section 1246 of the Revised Civil Code) not only does not subordinate the effectiveness of the contract as between the contracting parties to any specific extrinsic formality, but recognizes its complete effectiveness by the mere fact of its granting the contracting parties themselves a right of action to compel each other to execute the instrument or comply with any other special formality when such formalities are necessary to give full effect to the purposes and objects of the contract. This substan-

tially is equivalent to establishing the compliance with said formality as an implied condition of all contracts, although the contracting parties may not have so stipulated expressly, and not to subordinate the institution of the principal action to enforce compliance with the obligations contracted to the bringing of the secondary action to compel compliance with the formalities, for no reason for such subordination could exist inasmuch as both actions are based on the same right, *i. e.,* the existence of a valid contract, and have one single object, namely, compliance with the contract itself."

Finally, in a judgment of June 18, 1902, the same court said: .

"The effectiveness of contracts does not depend upon their extrinsic form, but upon the existence of such circumstances as are essential to their validity, being binding upon the parties regardless of the form in which they are executed; and their appearance in public or private instruments, as prescribed by law in some cases, is not an essential condition to their existence, but only a coercive means allowed the contracting parties to compel each other to comply therewith."

The doctrine laid down by the learned Spanish tribunal in the judgments just cited seems to us to be sound and we cited the one of June 18, 1902, in the case of *Vázquez* v. *Medina,* 17 P. R. R., 96.

The employment of the coercive means referred to in the judgment of the Supreme Court of Spain of June 18, 1902, may be necessary in order to secure the right arising from a purely verbal contract, such, for example, as a contract of bargain and sale of real property which cannot be recorded in the registry of property without being raised to a public instrument and the failure to record which may cause the purchaser to lose his right of ownership as against another purchaser who may have acquired title to the same property later by a public deed and recorded the same in the registry. The employment of said coercive measure may be convenient also in order to reduce to writing a contract, even if a private one, the fulfilment of which cannot be demanded immediately and proof of which by oral testimony may be

made difficult, if not impossible, by the lapse of time. But it cannot be held that an action to enforce compliance with the formalities must precede the action arising from the contract.

Moreover, we agree with the distinguished commentator Manresa that there is a manifest distinction between the necessity for the public instrument and for the private document, and it is that while the former may be necessary even after the verbal contract has been established by a judgment, the latter has hardly any object after such judgment, which presupposes greater authenticity and legal effect.

In the present case, the existence of the loan contract has been proved sufficiently by the testimony of witnesses. Its effectiveness cannot be denied because it has not been reduced to writing, although in the form of a private document, and at this time an action to enforce compliance with that external formality would have no object apart from the fact that a judgment to that effect would establish *ipso facto* the existence of the contract and would have greater legal force for the purpose of showing its existence than the written instrument itself executed by the debtor in acknowledgment of the obligation in compliance with the said judgment.

The court did not err in overruling the motion for nonsuit.

SECOND ERROR.

Neither did the court violate the provisions of article 51 of the Code of Commerce.

The said article provides that the testimony of witnesses shall not in itself be sufficient to prove the existence of a contract wherein the amount involved exceeds 1,500 *pesetas* if no other evidence is adduced in support thereof.

This case involves a loan contract and article 311 of the said code provides that a loan shall be considered commercial when the following conditions are present: 1. That one of the contracting parties is a merchant. 2. When the articles loaned are destined to commercial transactions.

It does not appear that either of these conditions exists with regard to the loan under consideration. The plaintiff does not allege in his complaint that the defendant is a merchant, nor does the latter allege it in his answer; and although plaintiff Emiliano Cintrón testified that Fernández was a commercial employee and witness Luis Toro Pérez testified that he has seen Fernández working in the establishment of Méndez, said testimony may be sufficient to prove that he was an employee of a commercial firm but not that he was a merchant, or one who regularly devotes himself to trade, as defined by article 1 of the Code of Commerce. Nor is it shown that the amount lent by the plaintiff to the defendant was to be used in commercial transactions, for the evidence shows that Fernández asked Cintrón to lend him that amount in order to establish himself as a merchant, but there is no evidence that he used the money for that purpose.

As this is not a commercial loan it is superfluous to discuss the violation of the statute cited.

### THIRD ERROR.

It appears from the statement of the case that after Emiliano Cintrón had testified that the Marshal of the Municipal Court of Yabucoa had delivered to him $162 of the $366 which he lent to José Fernández, by reason of a suit brought against Benítez and Vázquez, and that the loan transaction was made with Fernández, the attorney for the defendant asked Cintrón the following question: ''Is it not a fact that you transacted that business with another person who was a partner of Benítez?''. The said question was ordered stricken out and the defendant excepted.

We are of the opinion that although that question might have been admitted, the judge did not abuse his discretion in ordering it to be stricken out inasmuch as Cintrón had already testified categorically that he had made the transaction with Fernández, but in any event the ruling of the court did not prejudice the defendant, for if he had wished to prove

that Cintrón made the transaction with another person who was a partner of Benítez, he could have called that person as a witness for the purpose of contradicting the testimony of Cintrón and freeing himself of liability to the latter.

### FOURTH ERROR.

The statement of the case also shows that after witness Luis Toro Pérez had testified that the Marshal of the Municipal Court of Yabucoa delivered to Cintrón the said $162, the attorney for the defendant asked the witness the following question: "Do you know where the $162 came from?" The court ordered the question stricken out and the defendant excepted.

The court committed no error in so ruling, for Cintrón himself and not Toro Pérez was the proper person to testify as to where that money came from and he had already done so. In any event, the answer which the witness might have given to the said question would have had no influence on the result of the suit.

The judgment appealed from should be

*Affirmed.*

Justices Wolf, del Toro, Aldrey and Hutchison concurred.